THE DAVENPORT WATER CO. v. THE CITY OF DAVENPORT.

1. Contract for Water Supply and Payment Therefor: CONSTRUCTION OF. An ordinance, which was a part of the contract between the parties hereto, provided that, "during the first five years of this charter," the defendant should pay plaintiff, as an annual rental for each hydrant constructed as provided therein, a certain sum, and for each succeeding five years a certain reduced annual rental. The hydrants were not constructed until some months after the ordinance was adopted and the contract made:—*Held* that the first five years began with the date of the ordinance, and not with the date when the city subsequently began to pay rent for the hydrants.

*Appeal from Scott District Court.*

SATURDAY, JUNE 7.

THIS is an action by which the plaintiff seeks to recover of the defendant $2,521 and interest, upon a claim under an ordinance and contract for the use of certain public fire hydrants. The defendants admitted an indebtedness of $1,379.20, and denied any liability in excess of that amount. There was a

trial to the court without a jury, and judgment was rendered for the plaintiff for the full amount claimed.    Defendant appeals.

*C. M. Waterman,* for appellant.

*Ellis, Murphy & Gould,* for appellee.

ROTHROCK, CH. J.—On the 5th day of December, 1872, the city council of the city of Davenport passed an ordinance entitled "An ordinance to provide for the supply of water for the citizens of Davenport, Iowa, for domestic use and for fire protection."    By this ordinance there was granted to Michael Donahue and his associates, who should organize as a corporation, the exclusive privilege, for twenty-five years, of supplying the citizens of said city with water for domestic use and for fire protection, by a system of water works; said water to be taken from the Mississippi river.    It was ordained therein that, when accepted by the said water company, the ordinance should constitute and be regarded as a contract between the city and the said water company.    On the same day Donahue, for himself and associates, by a written instrument executed by him, accepted the said ordinance, and agreed that the terms and conditions thereof should be fully carried out and executed.

The ordinance provided for the laying of seventeen miles of main pipe, and that the works should be in full operation on or before the first day of January, 1874, and that three miles more of main pipe should be laid on or before January first, 1875.

Sections ten and eleven of the ordinance are as follows:

"SEC. 10.    *Be it further enacted,* That there shall be located on the line of said twenty miles of mains, at such points as may be designated by the city council, at least two hundred and forty (240) suitable fire hydrants, and others when needed, with double-discharge nozzles of the most approved make, and on all extensions of said mains there shall

be located at least twelve (12) hydrants to the mile, or a greater number if required, which hydrants are to be provided and maintained by said company, and to be connected with the street mains, and in said connection a suitable valve or stop-cock shall be placed to disconnect the water in the mains from the hydrants; also, valves shall be used in the mains at such points as will control the water properly in distribution.

"SEC. 11. *Be it further enacted*, That during the first term of five (5) years of this charter, for each fire hydrant located as hereinbefore provided, and of which said city shall at all times have the free and unobstructed use for fire purposes, the city shall pay to said company an annual rental of eighty dollars ($80); for each of said hydrants for the next term of five years, an annual rental of seventy dollars ($70); for each of said hydrants for the term of five years next thereafter, an annual rental of fifty dollars ($50); and thereafter, during the existence of this charter, an annual rental of forty dollars ($40) for each of said hydrants,—payments to be made semi-annually; the rent for said hydrants to commence as soon as said two hundred hydrants are ready for use."

The two hundred hydrants were not completed and ready for use until August 1, 1874. But the city council, by a resolution passed subsequently to the passage and acceptance of the ordinance, fixed the 1st day of March, 1874, as the date when it would commence paying for the hydrants, and plaintiff claims that thereby the 1st day of March, 1874, was made the beginning of the first five year term. On this theory the plaintiff would be entitled to the $80 rate up to March 1st, 1879, and to the $70 rate from that time up to March 1st, 1884. On the other hand, the defendant claims that the first term of five years, during which it was to pay for the use of said hydrants at the rate of $80 each per annum, began with the charter on December 5th, 1872, and ended on the 5th of December, 1877, and that the second term, during which it was to pay the $70 rate, ended on December 5th, 1882, and that after this date the rate should be $50 per annum for each

hydrant. These different views as to the times when the several periods named in the ordinance commenced gave rise to the present action, and the rights of the parties are to be determined by the provisions of section eleven of the ordinance above quoted.

Counsel for the respective parties have argued the question at considerable length, and have displayed wonderful ingenuity in endeavoring to elucidate and construe the provision of the ordinance about which they differ. It may be that we may be subject to criticism for omitting to state, follow and discuss the various positions taken by counsel which involve canons of construction, the intention of parties to contracts, the acts of the parties as evincing their understanding of the terms of the written instrument by which they are bound, and other considerations. We think that the question here presented is so plain that no rules of construction are admissible. The stipulation in the ordinance is that, "during the first term of five years of this charter," the sum of $80 shall be paid for each hydrant; for the next term of five years, $70; for the next term of five years, $50; and thereafter during the existence of the charter an annual rental of $40 dollars shall be paid. The charter or exclusive privilege commenced on the 5th day of December, 1872, and it will end December 5th, 1897.

It appears to us to be perfectly manifest that the first period commenced with the charter, or exclusive privilege, conferred on the water company. Any other rule, it seems to us, would be in plain violation of the contract between the parties. The different periods of time are unmistakably fixed by the commencement and duration of this charter, and no payment exceeding $70 for each hydrant could lawfully be made for any time after December 5th, 1877.

We attach no importance to the fact that for a time the city council made payments in excess of that authorized by the ordinance. It cannot be regarded as a construction of the contract by which the city is bound. See *Spencer v. Mil-*

*lisack*, 52 Iowa, 31, and *National Water Works Company v. School District*, 4 McCrary, U. S. C. C., 198.

REVERSED.